# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHEILA COLELLA,<br><br>                    Plaintiff,<br><br>v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>                    Defendant. | CIVIL ACTION NO: 20-CV-00367-JAM<br><br>**JOINT RULE 26(F) REPORT** |

Date Complaint Filed: March 17, 2020

Date Complaint Served: March 20, 2020

Date of Defendant's Appearance: April 10, 2020

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was held on May 19, 2020. The participants were:

Raymond C. Silverman
Christopher Oxx
Harrison M. Biggs
Christine Durant
Parker Waichman LLP
6 Harbor Park Drive
Port Washington NY, 11050
(516) 466-6500
rsilverman@yourlawyer.com
oxx@yourlawyer.com
hbiggs@yourlawyer.com
cdurant@yourlawyer.com

*Attorneys for Plaintiff Sheila Colella*

Mark Ostrowski
Sarah Dlugoszewski
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
(860) 251-5634
MOstrowski@goodwin.com
SDlugo@goodwin.com

Andrew L. Reissaus
Donald R. McMinn
Hollingsworth LLP
1350 I Street Northwest
Washington, District of Columbia 20005
(202) 898-5800
AReissaus@Hollingsworthllp.com
DMcminn@Hollingsworthllp.com

*Attorneys for Defendant Novartis Pharmaceuticals Corporation ("NPC")*

**I.    Certification**

Undersigned counsel (after consultation with their clients) certifies that (a) they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

**II.   Jurisdiction**

    **A.    Subject Matter Jurisdiction**

This Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332, because Plaintiff and NPC are citizens of different states, and the amount in controversy exceeds $75,000.00. Specifically, Plaintiff is a citizen of the State of Connecticut, while NPC is a citizen of the States of Delaware and New Jersey. Additionally, the damages Plaintiff alleges to have sustained exceed $75,000.00.

B.     **Personal Jurisdiction**

Personal jurisdiction is not contested.

III.    **Brief Description of Case**

A.     **Claims of Plaintiff:**

This is an action brought by Plaintiff, Sheila Colella, against NPC to recover for injuries resulting from NPC's failure to warn of significant risks associated with Tasigna – a Novartis-manufactured prescription medication for treatment of chronic myeloid leukemia ("CML"). Specifically, NPC failed to warn that Tasigna can cause severe, rapidly evolving, irreversible vascular disease often involving more than one site. NPC failed to warn that the nature of vascular disease caused by Tasigna could be so severe it could require repeat revascularization procedures, that often fail, and ultimately result in serious complications such as limb necrosis and amputations. Despite warning doctors and patients in Canada of the risks of atherosclerotic-related conditions, NPC concealed, and continues to conceal, its knowledge of Tasigna's unreasonably dangerous risks from Plaintiff, other consumers, and the medical community.

After beginning treatment with Tasigna and as a direct and proximate result of NPC's actions and inactions, Plaintiff suffered serious atherosclerotic-related injuries. Specifically, as a result of her use of Tasigna, Plaintiff suffered severe atherosclerotic disease of her lower extremities. This condition progressed rapidly, requiring multiple revascularization procedures. Despite these attempts at revascularization, the nature of Plaintiff's atherosclerotic disease was so severe that her lower extremities were rendered unsalvageable and, as the disease progressed, Plaintiff underwent multiple toe amputations, a right below the knee amputation, a left above the knee amputation, and finally a right above the knee amputation. Sheila Colella was just 56 years

old when she lost both of her legs. As a result of her injuries, Plaintiff seeks damages including but not limited to the following:

    a.    General damages;

    b.    Medical and incidental expenses, including Plaintiff's need for life long care;

    c.    Losses related to Plaintiff's inability to pursue her usual occupation and activities;

    d.    Pain and suffering and emotional distress according to proof;

    e.    Punitive and exemplary damages;

    f.    Plaintiff's reasonable attorneys' fees and costs;

    g.    Prejudgment interest; and

    h.    Any other relief this Court deems appropriate.

**B.    Defenses and Claims (Affirmative Defenses, Counterclaims, Third Party Claims, Cross Claims) (either pled or anticipated) of Defendant:**

NPC generally denies all allegations in the Complaint and Jury Demand ('the Complaint") of plaintiff. NPC's product Tasigna® is a cancer medication that is FDA-approved to treat patients with Philadelphia chromosome positive chronic myeloid leukemia ("CML"). CML is a blood cancer, one in which, over time, the body overproduces white blood cells. Unchecked, the overproduction eventually accelerates and crowds out the red blood cells necessary to transport oxygen throughout the body. Without sufficient oxygen, the CML patient suffers organ damage and dies. As of 2016, CML had a 69.2% five-year survival rate, up from 47.9% in 2000. The significant increase in survival between 2000 and 2016 paralleled the increase in the availability of tyrosine kinase inhibitor ("TKI") medicines, including NPC's Tasigna®. Tasigna® has been shown to be superior to its predecessor TKI treatment, Gleevec®, in treating CML. NPC denies that that there are any defects associated with Tasigna®.

Plaintiff will be unable to meet her burden to prove that Tasigna® can cause peripheral arterial occlusive disease ("PAOD") and that Tasigna® caused her alleged injuries. Moreover, plaintiff will be unable to prove that the FDA-approved labeling for Tasigna® was inadequate. For more than three years before plaintiff alleges she was prescribed Tasigna® (starting in April 2017), Tasigna®'s package insert contained a dedicated Warnings & Precaution Section about the very injury plaintiff alleges here – Cardiac and Vascular Events, including the PAOD. At the time plaintiff alleges she started taking Tasigna®, the prescribing information stated:

> **5.4 Cardiac and Arterial Vascular Occlusive Events**
>
> Cardiovascular events, including arterial vascular occlusive events, were reported in a randomized, clinical trial in newly diagnosed CML patients and observed in the postmarketing reports of patients receiving nilotinib therapy. With a median time on therapy of 60 months in the clinical trial, cardiovascular events, including arterial vascular occlusive events, occurred in 9.3% and 15.2% of patients in the Tasigna 300 and 400 mg bid arms, respectively, and in 3.2% in the imatinib arm. These included cases of cardiovascular events including ischemic heart disease-related cardiac events (5.0% and 9.4% in the Tasigna 300 mg and 400 mg bid arms respectively, and 2.5% in the imatinib arm), peripheral arterial occlusive disease (3.6% and 2.9% in the Tasigna 300 mg and 400 mg bid arms respectively, and 0% in the imatinib arm), and ischemic cerebrovascular events (1.4% and 3.2% in the Tasigna 300 mg and 400 mg bid arms respectively, and 0.7% in the imatinib arm). If acute signs or symptoms of cardiovascular events occur, advise patients to seek immediate medical attention. The cardiovascular status of patients should be evaluated and cardiovascular risk factors should be monitored and actively managed during Tasigna therapy according to standard guidelines *[see Dosage and Administration (2.2)]*.[1]

NPC thus requests that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that NPC be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

---

[1] Feb. 21, 2017 Approved Tasigna Label, https://www.accessdata.fda.gov/drugsatfda_docs/label/2017/022068s024lbl.pdf.

NPC's affirmative defenses and plaintiff's failures of proof include, but are not limited to, the following, and NPC reserves the right to amend them as the case progresses:

a. The Complaint, in whole or part, fails to state a claim or cause of action against NPC upon which relief can be granted.

b. Plaintiff's claims are barred, in whole or in part, because the product at issue was designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

c. Plaintiff's claims are barred, in whole or in part, because the labels and information accompanying the products at issue were approved by the U.S. Food and Drug Administration or other appropriate regulatory agencies.

d. Plaintiff's claims are barred, in whole or in part, by applicable products liability statutes or other law providing absolute or limited immunity or a disputable presumption of immunity against liability for pharmaceutical products approved by the FDA.

e. Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

f. Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Tasigna®.

g. Tasigna® was fit and proper for its intended purposes and the social utility of the drugs outweighed any possible risk inherent in the use of the products.

  h. Plaintiff's claims for punitive damages are barred because plaintiff has failed to allege conduct warranting imposition of punitive damages under New Jersey law, Connecticut law and/or other applicable state laws.

  i. Punitive damages against NPC cannot be recovered based on alleged fraudulent representation to the FDA. *See, e.g., Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 343 (2001); *see also* N.J.S.A. § 2A:58C-5(c); *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961 (6th Cir. 2004); *McDarby v. Merck & Co.*, 949 A.2d 223 (NJ Super. Ct. App. Div. 2008).

  j. Plaintiff's common law claims are barred, in whole or part, by application of the Connecticut Products Liability Act, Conn. Gen. Stat. Ann. § 52-572n.

  **C.**  **Defenses and Claims of Third-Party Defendant:**

Not Applicable.

**IV.** **Statement of Undisputed Facts**

  Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The following material facts are undisputed:

  1. NPC is incorporated in Delaware, with its principal place of business in East Hanover, New Jersey, and is thus a citizen of the States of Delaware and New Jersey.

2. NPC researches, develops, produces, markets, and sells pharmaceuticals, including Tasigna, throughout the United States.

3. Tasigna® is a prescription medication that is FDA-approved to treat patients with Philadelphia chromosome positive chronic myeloid leukemia ("CML"). CML is a cancer which starts in blood-forming stem cells of the bone marrow, where a genetic change occurs in the stem cells that form, among other things, most types of white blood cells.

4. Tasigna® is considered a tyrosinekinase inhibitor ("TKI" medicine), which blocks chemical messengers (enzymes) in the cancer cells called tyrosine kinases, thus inhibiting their growth and division.

V. **Case Management Plan:**

   A. **Initial Disclosures**

   Initial disclosures will be served by July 10, 2020.

   B. **Scheduling Conference**

   1. The parties do not request to be excused from holding a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

   2. The parties prefer that a scheduling conference, if held, be conducted in person, but understand that given the current COVID-19 related restrictions, a telephonic conference may be preferred.

   C. **Early Settlement Conference**

   1. The parties certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

   2. The parties do not request an early settlement conference.

    3.  The parties prefer a settlement conference, when such a conference is held, with a magistrate judge or a private ADR provider.

    4.  At this time, the parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

  **D.**  **Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings**

The parties have discussed any perceived defects in the pleadings and have reached the following agreements for resolution of any issues related to the sufficiency of the pleadings.

    1.  Plaintiff should be allowed until September 24, 2020 to file motions to join additional parties and until April 26, 2021 to file motions to amend the pleadings. Motions filed after the foregoing dates will require, in addition to any other requirements under the applicable rules, a showing of good cause for the delay.

    2.  Defendant should be allowed until October 8, 2020 to file motions to join additional parties and until May 10, 2021 to file a response to any amended complaint. Motions filed after the foregoing dates will require, in addition to any other requirements under the applicable rules, a showing of good case for the delay.  In the event that plaintiff makes an amendment late in the discovery period, NPC requests that adequate time be added to the schedule in order to allow for adequate and fulsome discovery on any additional parties or issues raised by such an amendment.

  **E.**  **Discovery**

    1.  Recognizing that the precise contours of this case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R.

Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case":

**Plaintiff's Position**:

Prior to the commencement of this action, claims alleging atherosclerotic-related injuries caused by Tasigna were filed against NPC in the Eastern District of California (Kristi Lauris v. Novartis AG et al., 1:16-cv-00393-LJO-SAB) and the Southern District of Florida (Dennis McWilliams v. Novartis AG et al., 2:17-cv-14302-RLR). Counsel for Plaintiff here did not appear in these actions. Both of these cases were resolved shortly before scheduled trial dates and after the completion of fact and expert discovery and subsequent denial of NPC's Summary Judgement Motion.

The parties are meeting and conferring as to the whether the discovery conducted in those cases may be applicable to the matter at bar. Plaintiff's counsel here does not have knowledge of the extent of this prior discovery and therefore reserves all rights to conduct discovery on all matters relevant to the claims and defenses herein. In order to facilitate this process, Plaintiff has requested an initial, informal exchange of certain information, which Defendant has agreed to consider. This information will further assist the parties in determining the scope of discovery that was completed in the prior actions and the additional discovery needed here. There is undoubtedly additional discovery that will be required to address the needs of this case.

For example, Plaintiff is aware that the timeframe covered by the discovery conducted in those two cases ended in approximately 2014. Plaintiff will seek additional discovery up to the present. There are likely to be additional areas of discovery relevant to the particular claims and defenses which are unique to this particular case which the parties intend to discuss.

Finally, the Court should be aware there are approximately 30 cases involving similar claims

currently pending in several Federal Districts across the United States, as well as in New Jersey State Court. The parties are discussing coordination of discovery in these actions.

**Defendant's Position (if different)**:

As an initial matter, it is unclear at this stage the scope of the discovery that plaintiff may seek from NPC. Plaintiff will likely seek to depose numerous current and former employees of NPC and the production of millions of pages of NPC documents. Although plaintiff's counsel will have access to discovery taken in two prior cases involving Tasigna®, plaintiff has indicated an intent to take additional discovery to cover an additional six years of information on top of the discovery in the previous litigation. As the plaintiff notes above, NPC is a defendant in nearly three dozen cases in federal courts and in New Jersey state court involving claims arising from treatment with NPC's product, Tasigna®. The parameters and scope of discovery of NPC in these matters merits informal coordination in terms of protocols such as search terms and custodians. The parties agreed to begin these discussions, but it will take time to confer and reach agreements about these issues.

Importantly, this case implicates an array of scientific, medical, and regulatory issues that will be the subject of wide-ranging expert reports and testimony. NPC anticipates that the parties will designate a dozen, or perhaps more expert witnesses (six per party, or more), which does not include the numerous treating physicians who will need to be deposed. NPC expects that it will seek evidentiary hearings on its *Daubert* motions that will challenge the admissibility of plaintiff's experts.

Moreover, discovery in this case includes the need to obtain copies of medical records from plaintiff's healthcare providers. The records collection process takes time, and is iterative in nature. As each set of records is received, they must be reviewed, and follow-up undertaken, to ensure

that the provider has produced a complete set of records. Also, review of collected records inevitably leads to the identification of additional healthcare providers or locations of treatment, and new requests must be made to collect those. Although the parties work diligently to collect records, often facilities take significant amounts of time to respond to requests. To date NPC has no records from this plaintiff, so this process will require substantial work.

COVID-19 enhances the challenge associated with records collection. The process will likely require additional time because of the burden that the pandemic has put on healthcare providers and the possibility that offices, due to social distancing considerations, will not have extra staff available on-site to locate and copy needed records. The uncertainty created by the COVID-19 pandemic poses additional problems to completing discovery and being trial ready in a year. Although some stay at home orders are beginning to be lifted or relaxed, the likelihood is that substantial restrictions on travel (including in New Jersey, where NPC is located) will continue for months and that there will be 14-day quarantine requirements if individuals travel to certain areas. Given the unprecedented situation and the logistical hurdles surrounding COVID-19, NPC requests that the Court set a schedule that builds in additional time for the parties to work around these issues.

2. The parties anticipate that discovery will be needed on the following subjects: the elements necessary to prove Plaintiff's claims; corporate document and deposition discovery from NPC regarding Tasigna®; discovery from plaintiff related to her medical, work and social history; third party discovery to obtain medical and other records relevant to the claims; and expert discovery, including on general and specific medical causation.

At this time Plaintiff anticipates she will request discovery into Novartis' conduct surrounding the following areas as they relate to Tasigna along with any additional areas of discovery that may be revealed as the case progresses:

a. Licensing;
b. Research & Development;
c. Patents;
d. Preclinical Development;
e. Clinical Development;
f. Medical Affairs;
g. Medical Coding;
h. Pharmacovigilance/Drug Safety;
i. Health Insurance Reimbursement;
j. Life Cycle Management;
k. Marketing;
l. Labeling;
m. Market Research;
n. Sales and Sales Training;
o. Key Opinion Leaders and/or Speakers' Bureaus;
p. Budgeting; and
q. Regulatory or compliance functions, including those related to the FDA and other foreign regulatory bodies

NPC disputes that all of the topics listed above by plaintiff are appropriate areas for discovery, and will confer with plaintiff to appropriately tailor discovery to the needs of this case. NPC will, among other things, request medical records and depositions of plaintiff's healthcare providers. Given the allegations concerning her complicated health status, there will be a large number of providers relevant to both her cancer treatment and her treatments for her vascular disease. NPC will also seek discovery to identify and depose additional witnesses and documents relevant to plaintiff's damages claims.

3.	All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced by May 26, 2020 and completed (not propounded) by August 26, 2021 (Plaintiff) / January 20, 2022 (NPC).[2]

4.	Discovery will not be conducted in phases, except that expert discovery will be completed following fact discovery.

5.	If discovery will be conducted in phases, describe each phase and state the date by which it will be completed. Plaintiff proposes that fact discovery be completed by April 1, 2021, and that expert discovery be completed by August 26, 2021. NPC proposes that fact discovery be completed by August 3, 2021, and that expert discovery be completed by January 20, 2022.

6.	As detailed above, the parties are actively meeting and conferring regarding the discovery conducted in the two prior litigations. The number of depositions Plaintiff requests in this case will likely depend on that prior discovery. However, at this time, Plaintiffs do not anticipate requesting more than fifteen (15) depositions of fact witnesses. After the parties have met and conferred regarding previous discovery and depositions and what additional discovery is needed, Plaintiff will confer with NPC in an attempt to reach an agreement as to the number of additional depositions required at this time. NPC does not agree at this time to extend the presumptive limit of 10 depositions, except to agree that expert depositions should not count toward the parties' limits. Plaintiffs also anticipate that depositions of NPC's fact witnesses can be coordinated with those cases pending in other Federal Courts and the State of New Jersey, so as to avoid duplicative efforts. In the event that NPC determines, after having had the opportunity to

---

[2] Where the parties have not reached an agreement regarding a proposed deadline, the parties' respective proposals are indicated.

collect and review medical records, that more than 10 fact depositions are necessary, it will confer with plaintiff to in an attempt to reach an agreement.

       7.       The parties do not anticipate requesting permission to serve more than 25 interrogatories.

       8.       Plaintiff intends to call expert witnesses at trial. Defendant intends to call expert witnesses at trial.

       9.       Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they bear the burden of proof by May 15, 2021 (Plaintiff proposal) / October 4, 2021 (NPC proposal). Depositions of any such experts will be completed by June 26, 2021 (Plaintiff proposal) / December 20, 2021 (NPC proposal).

      10.      Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they do not bear the burden of proof by July 26, 2021 (Plaintiff proposal) / January 20, 2022 (NPC proposal). Depositions of such experts will be completed by August 26, 2021 (Plaintiff proposal) / February 25, 2022 (NPC proposal).

      11.      Undersigned counsel (after consultation with their respective clients concerning computer-based and other electronic information management systems, including historical, archival, back-up and legacy files, in order to understand how information is stored and how it may be retrieved) and self-represented parties have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms and/or other techniques to be used in connection with the retrieval and production of such information, the location and format of electronically stored information,

appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. The parties have preliminarily discussed entering into an ESI Protocol and are hopeful an agreement will be reached. The parties intend to submit a proposed ESI Protocol or, in the alternative, briefing of any issues that cannot be agreed upon by July 10, 2020.

12. Undersigned counsel (after consultation with their clients) and self-represented parties have also discussed the location(s), volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms. The parties have preliminarily discussed entering into an ESI Protocol that will also address non-electronically stored information and are hopeful an agreement will be reached. The parties intend to submit a proposed ESI Protocol or in the alternative briefing of any issues that cannot be agreed upon by July 10, 2020.

13. Undersigned counsel and self-represented parties have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties have preliminarily discussed a Protective Order to address these issues. At this time, Plaintiff has not yet agreed to the entry of a protective order in this case and may object to entry of such order. Defendant NPC requests that the Court enter a Rule 502(d) order in order to facilitate discovery in this matter. Plaintiff is reviewing the proposed order and will advise NPC if Plaintiff will consent to entry or object to the same. The parties intend to submit a proposed Protective Order or in the alternative briefing of any issues that cannot be agreed upon by July 10, 2020.

**F.   Other Scheduling Issues**

NPC anticipates requesting that the Court conduct an evidentiary hearing related to the expected *Daubert* issues in this case and requests that the schedule allow time for an evidentiary

hearing following the completion of *Daubert* briefing. NPC proposes that *Daubert* motions be due at the same time as summary judgment motions.

  G. **Summary Judgment Motions**

Summary judgment motions, which must comply with Local Rule 56, will be filed on or before September 1, 2021 (Plaintiff proposal) / April 1, 2022 (NPC Proposal).

  H. **Joint Trial Memorandum**

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by October 5, 2021 (Plaintiff proposal) / June 3, 2022 (NPC proposal) unless there is then pending before the Court any dispositive motion, in which event the joint trial memorandum shall be filed within 60 days following the Court's final disposition of such dispositive motion.

VI. **TRIAL READINESS**

The case will be ready for trial by October 26, 2021 (Plaintiff proposal) / July 8, 2022 (NPC proposal).

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

**Plaintiff**

By: _____ Date: 05/26/2020
  Thomas A. Vingiuto

By: _____ Date: 5/26/2020
  Raymond C. Silverman

**Defendant**

By: _____ Date: 5/26/2020
  Andrew L. Reissaus