*Colella v. Novartis Pharmaceuticals Corporation*   Plaintiff's Letter Brief re Discovery Dispute
No. 3:20-CV-00367-jam

November 4, 2020

**Via ECF**

Honorable Jeffrey Alker Meyer
United States District Court District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street
New Haven, CT 06510

    **Re:**    **Sheila Colella v. Novartis Pharmaceuticals Corporation**
              **Docket No.: 3:20-CV-00367-jam**

Dear Judge Meyer:

Plaintiff, Sheila Colella, respectfully submits this letter brief regarding the parties' discovery dispute pertaining to Plaintiff's Fed. R. Civ. P. 30(b)(6) deposition notices. Plaintiff requests a hearing on this issue.

Respectfully submitted,

*/s/ Raymond C. Silverman*

Raymond C. Silverman

*Attorney for Plaintiff*

*Introduction*

Though the need for this briefing confounds Plaintiff, the issue before the Court is infinitely simple. On October 6, 2020 and October 8, 2020, Plaintiff served Defendant Novartis Pharmaceuticals Corporation (hereinafter, "NPC") with two foundational deposition notices pursuant to Fed. R. Civ. P. 30(b)(6). *See* Exhibits A and B, attached hereto (hereinafter, "the notices"). To date, NPC has flatly refused to produce a witness on *any* of the topic areas, in response to *either* of the notices. *See* NPC's letters in response attached hereto as Exhibits C and D (both stating that NPC "will not provide a witness"). In fact, despite multiple attempts to engage NPC in the meet and confer process, NPC has refused to even discuss the scope of the notices. NPC has instead told Plaintiff to seek the information elsewhere,[1] or through different discovery methods. In short, Plaintiff properly noticed two Rule 30(b)(6) depositions and NPC said "no." Such brazen disregard for procedure and attempt to dictate the course of discovery should not be countenanced by this Court.

*History of the Case*

This is a complex, products liability action brought by Plaintiff, Sheila Colella, against NPC, a multibillion-dollar pharmaceutical corporation, to recover for injuries resulting from NPC's failure to properly and adequately warn of significant risks associated with Tasigna – a prescription medication developed, marketed, and sold by NPC for the treatment of chronic myeloid leukemia ("CML"). It is one of over fifty (50) cases involving similar claims currently pending in several federal district courts across the United States, as well as in New Jersey state court. Specifically, NPC failed to warn that Tasigna can cause severe, rapidly evolving, irreversible vascular disease often involving more than one site. Plaintiff here suffered severe atherosclerotic disease of her lower extremities, a condition that progressed rapidly, ultimately resulting in bilateral above-the-knee amputations. Sheila Colella was just 56 years old when she lost both of her legs.

*The Notices Seek Relevant, Foundational Discovery*

Plaintiff's Rule 30(b)(6) notices cover two basic topic areas. The first notice (Exhibit A) seeks testimony regarding NPC's corporate structure, operations, and third-party affiliations as they relate to Tasigna. The second (Exhibit B) concerns a matter recently disclosed by NPC regarding a system issue that may have led to data loss from a key custodian and any other undisclosed data losses, which may affect discovery in this case. *See* Exhibit E.[2]

Rule 30(b)(6) notices regarding corporate structure, operations, and third-party affiliations are standard in pharmaceutical litigation.[3] Typically, there are at least hundreds of employees involved in the life cycle of a pharmaceutical drug, which often spans decades. In addition, pharmaceutical

---

[1] NPC suggests Plaintiff obtain the discovery she seeks through document productions made in a prior litigation, to which neither Plaintiff nor her attorneys were party.

[2] NPC disclosed this issue to Plaintiff for the first time on September 29, 2020, by providing a copy of a letter that was originally sent to a different attorney in a prior Tasigna-related litigation in March of 2017.

[3] Parker Waichman LLP has been practicing in the field of complex pharmaceutical litigation for over two decades. NPC's outright refusal to produce a witness in response to Plaintiff's Rule 30(b)(6) deposition notice as to corporate structure, operations, and third-party affiliations is virtually unprecedented.

companies like NPC operate in a cross-functional way. Though there may be similarities among big pharmaceutical companies in how they operate with respect to one of their products, there is no "handbook" that outlines the unique nature of each individual company. Foundational depositions like this are essential for plaintiffs at the outset of this type of case, as they shape nearly all aspects of future discovery, including, by way of example only, the selection of relevant custodians, parameters for document production, the identification of witnesses to be noticed for depositions, and potential third-party discovery.

Indeed, the express purpose of the first notice is simple. Plaintiff is entitled to elicit testimony regarding current and former employees of NPC, along with third-party affiliates, who were involved with Tasigna, including the extent and nature of their roles. In fact, NPC admits the "parties have conferred and continue to confer about the manner and scope of document productions in the case, *including the identification of custodians and search terms to be used.*" Exhibit C at 3 (emphasis added).

Likewise, Plaintiff is entitled to elicit testimony regarding a "system issue"[4] wherein NPC could not rule out that emails from a key custodian may have been lost and explore any other potentially undisclosed data losses, which may affect discovery in this case and the other cases pending throughout the country. *See* Exhibit E. While depositions on such topics may not be common at the outset in pharmaceutical litigation, not every case involves a situation where a defendant company loses data that should have been preserved for potential litigation. Of note, NPC did not reveal this "system issue" to Plaintiff during negotiation of the Stipulated ESI Protocol entered in this matter (ECF No. 41-1), despite the parties negotiating specific provisions, which would unquestionably have called for disclosure of this information. For example, Plaintiff originally included the following language in her proposed ESI protocol:

> Lost, Destroyed or Irretrievable ESI. If a Defendant Party learns that unique, responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Defendant Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

This language was struck by NPC, without mentioning the "system issue" expressed in Exhibit E, despite the undisputed fact that it was known to NPC at that time. It was only *after* Plaintiff specifically requested information regarding deleted or destroyed documents from NPC's prior production that NPC informed Plaintiff's counsel of the letter attached hereto as Exhibit E, which is originally dated March 30, 2017. NPC's knowledge of the "system issue" thus predated the parties' negotiation of the ESI protocol and should have been disclosed to Plaintiff's counsel

---

[4] As of today, Plaintiff has no information as to what exactly the "system issue" entailed, whether it affected the data of more than one custodian, how much data that should have been preserved was lost, whether non-custodial sources of data were effected, to name but a few open issues, which require examination of a witness with knowledge at a deposition.

during that time. Plaintiff is entitled to explore the nature and extent of the issue and discover how it may impact discovery in this case and other cases.

By serving these notices, Plaintiff is simply attempting to meaningfully participate in her own discovery process, rather than be saddled with whatever information NPC unilaterally chooses to provide. At the start of any lawsuit, but particularly a complex pharmaceutical matter, plaintiffs face a vast informational disadvantage. NPC should not be able to maintain that advantage by dictating the manner in which Plaintiff proceeds with discovery that she deems necessary. Such a scenario does not constitute proper discovery. *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003) ("[i]t is not up to [Defendant] to determine what discovery Plaintiffs need.").

### *Plaintiff is Entitled to Rule 30(b)(6) Depositions*

Rather than produce a witness or witnesses at this stage and without conferring as to the specific nature of the notices, NPC has objected and insists that Plaintiff seek the relevant, foundational discovery sought by these notices through some other vehicle. That is simply not how discovery works.

The rule is plain.

> In its notice … a party may name as the deponent a public or private corporation … and must describe with reasonable particularity the matters for examination. The named organization *must* then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify … The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30 (emphasis added). Here, Plaintiff served two notices pursuant to Rule 30(b)(6), which describe with reasonable particularity the matters for examination. Rather than designate a witness as required by the rule, or even engage Plaintiff in a conference regarding the scope of the notices, NPC has improperly demanded Plaintiff seek alternate discovery methods. The law is clear in this respect and NPC's actions cut against the very nature of a Rule 30(b)(6) deposition.

> If the case law outlining the guiding principles of 30(b)(6) depositions could be summarized into a *de facto* Bible governing corporate depositions, then the litigation commandments and fundamental passages about pre-trial discovery would likely contain the following advice: …
>
> In responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position and that a corporate deposition is therefore unnecessary…
>
> Similarly, a corporation cannot point to interrogatory answers in lieu of producing a live, in-person corporate representative designee.

*QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012), citing *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 540 (D. Nev. 2008) and *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 127 (M.D.N.C. 1989).

In addition, Plaintiff is the master of her choice vis-à-vis the manner of discovery.

> There is no burden on the party seeking the deposition to show that written interrogatories would not be sufficient for its purposes. In fact, the procedure is just the opposite. Fed. R. Civ. P. 30(b); 4 Moore, Federal Practice § 30.08 (2d ed. 1948). Experience has made it abundantly clear that the advantages of oral examination far outweigh the advantages of written interrogatories in carrying out the deposition procedures in aid of discovery under the rules.

*Greenberg v. Safe Lighting, Inc, Inertia Switch Div.*, 24 F.R.D. 410, 411 (S.D.N.Y. 1959). Even where defendants point to other means of obtaining discoverable information, courts have ordered 30(b)(6) depositions due to the unique nature of the discovery instrument. In *In re Vitamins Antitrust Litigation*, a class action matter, Defendant Bioproducts objected to producing a witness in response to a Rule 30(b)(6) deposition notice, arguing it would result in duplicative discovery given that Bioproducts had produced and authenticated underlying documents. However, the court ruled that "[a]s the Plaintiffs correctly point out, the two forms of discovery are not equivalent. While the … submissions constitute admissions by Bioproducts, its Rule 30(b)(6) deposition is a sworn corporate admission that is binding on the corporation." *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003). In ordering Bioproducts to produce a properly educated witness, the court continued:

> In addition, if there are conflicts among Bioproducts employees regarding facts in the submissions or there are other explanations or interpretations that Bioproducts has regarding the submissions, Plaintiffs are entitled to them now as it is within Bioproducts. Fed. R. Civ. P. 30(b)(6). As this Court has previously stated … '*[i]t is not up to Bioproducts to determine what discovery Plaintiffs need.*' … Bioproducts argument that the Rule 30(b)(6) discovery is unnecessary and duplicative is without merit.

*Id.* (emphasis added). Similar rulings pervade federal courts across the country. *See, e.g., Muzak Corp. v. Muse-Art Corp.*, 16 F.R.D. 172, 173 (E.D. Pa. 1954) ("The right of the plaintiff to orally examine the defendant is not affected by the fact that the defendant has now agreed to permit plaintiff to inspect its books and records for the reason that a party itself, not its adversary, has the right to invoke any one of the pre-trial discovery procedures it chooses."); *William F Jobbins, Inc v. Am. Exp. Lines*, 16 F.R.D. 178, 179 (S.D.N.Y. 1954) (Finding that a "respondent should have the benefit of the more complete technique of oral deposition" and denying the branch of a motion seeking to conduct discovery through written interrogatories.); *Worth v. Trans World Films*, 11 F.R.D. 197, 198 (S.D.N.Y. 1951) ("With respect to the alternative request that the deposition be taken only on written interrogatories, the advantages of oral examination over the rigidity of written interrogatories are readily acknowledged. Cross-examination of a witness who may be evasive, recalcitrant or non-responsive to questions is an essential in ferreting out facts, particularly of an adverse party or witness. The affidavit submitted on behalf of the defendant indicates that

the proposed examination will be far from a perfunctory one and no reason has been submitted why full scope of inquiry should be proscribed in this case.").

### *The Issue of Scope is Not Ripe*

NPC will inevitably attempt to mischaracterize or conflate the issue at hand by levying objections and argument as to the scope of the notices, claiming they are overly broad, not proportional to the needs of the case, and would result in undue burden. That issue, however, is not ripe.

Despite Plaintiff's multiple offers to discuss the scope of the notices, NPC has refused. *See, e.g.,* Exhibit F ("*While Plaintiff is willing to discuss the scope of the deposition*, we are not willing to conduct the deposition *after* document production, under any circumstances. We are also not interested in NPC dictating the discovery device through which it will provide this highly relevant foundational information and plan to move forward with the noticed deposition."). Instead, NPC stands on its position that such depositions are entirely improper at this time and should only be taken, if at all, after document production has taken place or other discovery methods have been exhausted. As such, the sole issue before the Court remains: should NPC be allowed to dictate the course of Plaintiff's discovery in this matter? The answer is no.

Accordingly, Plaintiff requests this Court compel NPC to designate a witness (or witnesses) in response to the notices.